**UNITED STATES, Petitioner,**

v.

**The Honorable Sylvia BACON, Associate Judge, Superior Court of the District of Columbia, Respondent.**

**No. 80–407.**

District of Columbia Court of Appeals.

Argued April 30, 1980.

Decided March 17, 1981.

Harold Damelin, Asst. U. S. Atty., Washington, D.C., with whom Charles F. C. Ruff, U. S. Atty., John A. Terry, Michael W. Farrell, Richard C. Otto, and Paul N. Murphy, Asst. U. S. Attys., Washington, D.C., were on the petition for writ of mandamus.

Barry F. Kowalski, Washington, D.C., for respondent Perkins.

W. Gary Kohlman, Public Defender Service, Washington, D.C., with whom Silas J. Wasserstrom, Public Defender Service, Washington, D.C., was on the response to the petition.

Before NEWMAN, Chief Judge, KELLY, Associate Judge, and GALLAGHER,* Associate Judge, Retired.

PER CURIAM:

On March 18, 1980, Judge Sylvia Bacon entered orders which granted, in part, the defendants' preindictment request for discovery.** The government has petitioned this court for a writ of mandamus directing the trial judge to vacate her orders on the ground that she had no authority, inherent or under Super.Ct.Cr.R. 16, to direct the government to afford discovery to persons who have been detained but not indicted. On notice to the court, while the petition was pending, that the defendants had been indicted, we issued an order to show cause why the petition should not be dismissed as moot. The government filed a response urging a decision on the petition.

---

* Judge Gallagher was an Associate Judge of the court at the time of argument. His status changed to Associate Judge, Retired, on February 27, 1981.

** At that time, the defendants had been detained on two complaints since October 10, 1979, but had yet to be indicted.

We conclude that the issue presented in this case, while theoretically capable of repetition, is not likely to evade review. We say this for the same reason that we would deny the petition for writ of mandamus. Where there is an available procedure, even short of contempt, to bring a serious, vigorously disputed matter before this court, on a direct appeal, *see Holmes v. United States*, D.C.App., 343 A.2d 272, *rehearing denied*, 346 A.2d 517 (1975), issuance of the extraordinary writ of mandamus is inappropriate and impermissible. *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967). Since the issue may readily be brought before this court for review in a proper case, the instant petition is dismissed as moot.

*So ordered.*

GALLAGHER, Associate Judge, Retired, dissenting:

If I understand the majority opinion correctly, it says that (a) because subsequent to this appeal the defendant in this case was indicted, the issue is now moot on whether the trial judge had the authority to order pre-indictment discovery, and (b) in addition, under our decision in *Holmes v. United States*, D.C.App., 343 A.2d 272 (1975), there is available a procedure, short of contempt, whereby the validity of a court order requiring such discovery may be tested and, therefore, issuance of a writ of mandamus is inappropriate.

I disagree as I believe this case to be (1) a classical case where the doctrine of mootness does not apply and (2) a clear instance for grant of the writ of mandamus under our prior decisions.

Mootness is a flexible concept and it is established law that where a controversy is no longer "live" yet the issue is likely to recur in other cases but continually escape review the court should proceed to resolution of the issue. *Roe v. Wade*, 410 U.S. 113, 125, 93 S.Ct. 705, 712, 35 L.Ed.2d 147 (1973), quoting *Southern Pacific Terminal Co. v. I.C.C.*, 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed.2d 310 (1911); *Dobbs v. Neverson*, D.C.App., 393 A.2d 147, 155 n.14 (1978);

*Alton & Southern Railway Co. v. International Association of Machinists & Aerospace Workers*, 150 U.S.App.D.C. 36, 42–44, 463 F.2d 872, 878–80 (1972).

I find it curious that the majority opinion here speculates that this issue is only "theoretically capable of repetition" when the government has represented to this court that the issue of pre-indictment discovery has now become "a 'live' one among the defense bar." The government asserts further that "[it] will almost surely be subjected to pre-indictment discovery orders in the future—as a matter of hard reality, not speculation." In fact, said the government, another trial judge has issued a pre-indictment discovery order citing as authority the order entered by the trial judge in this case.

I do not understand for what reason the majority has rejected these factual assertions of the government and, instead, adopted its own speculations. The government is scrupulous in its factual assertions to this court. In this jurisdiction, this is an unvarying tradition, and one we should not discourage. This court is ill-advised to get itself into the position of rejecting out of hand factual representations of the government, such as this, unless it is willing to state the basis for doing so.

It seems manifest that this case fits into the mootness exception doctrine. Consequently, we should proceed to review this case on the merits.

But, says the majority, there is another available procedure, short of contempt, outlined in *Holmes v. United States, supra,* to bring this dispute before the court and, therefore, mandamus is inappropriate. In *Holmes,* however, the trial court entered an order suppressing the testimony of the government's eyewitnesses to the crime because of refusal by the government to comply with the court's pretrial order to furnish their names and addresses. That case is distinguishable because here the trial court is dealing with the pre-indictment stage and, consequently, a grand jury proceeding, not a trial, is first involved. The trial court has no authority to intrude itself in this

manner into a grand jury proceeding. *United States v. Moultrie*, D.C.App., 340 A.2d 828, 830 (1975); *United States v. Engram*, D.C.App., 337 A.2d 488, 493 (1975). While it may do so in a circumstance, for example, where a showing is made by an unindicted individual of an intrusion upon the rights of the individual, *e. g., Hale v. Henkel*, 201 U.S. 43, 67–70, 26 S.Ct. 370, 376–77, 50 L.Ed.2d 652 (1906), nothing resembling such a justification is presented here.

The majority also relies upon *Will v. United States*, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), but *Will* stands for a different proposition.[1] There, the Court said that mandamus was not appropriate because it found that the government did not contest the jurisdiction of the court to issue the disputed discovery order and that the record did not support a finding either that the order amounted to a violation of the rules or that the judge had a deliberate policy of disregarding the rules. *Id.* at 99–104, 88 S.Ct. at 275–79. "Even more important[ly]," the Supreme Court stated, the failure of the Court of Appeals to explain the reasons for its issuance of the writ made it impossible for the Court to "properly identify the questions for decision in this case before [it]." *Id.* at 104–06, 88 S.Ct. at 278–79.

The *Will* case has thus had no telling effect on the traditional rule that the writ of mandamus is properly issued "to confine an inferior court to a lawful exercise of its prescribed jurisdiction." *Roche v. Evaporated Milk Association*, 319 U.S. 21, 26, 63 S.Ct. 938, 941, 87 L.Ed. 1185 (1943). In this case, the court should decide on the merits, therefore, whether the trial court's order granting pre-indictment Rule 16 discovery was outside its jurisdiction, keeping in mind that merely erroneous rulings are not the proper subject for mandamus.[2] *United*

*States v. Moultrie, supra*, 340 A.2d at 830; *Will v. United States, supra*, 389 U.S. at 98 & n.6, 104, 88 S.Ct. at 275 & n.6, 278.

In her orders, the trial judge concluded that Rule 16 disclosure may be compelled *prior* to indictment because a trial court has the power to order discovery at any time after the case is pending. The cases relied upon by the trial court, however, involve *post-indictment* discovery. *See Rosser v. United States*, D.C.App., 381 A.2d 598 (1977); *United States v. Taylor*, 25 F.R.D. 225 (E.D.N.Y.1960). In fact, several of the cases cited in the trial court's order directly reflect the uniform judicial perception that discovery is only appropriate in the post-indictment context. *See Jett v. Casteneda*, 578 F.2d 842, 845 (9th Cir. 1978) (request by appointed counsel on behalf of unindicted prisoner under investigation for prison stabbing presented "no case, no controversy, and no jurisdiction to make an order on discovery"); *In re Grand Jury Proceedings Involving Berkley & Co.*, 466 F.Supp. 863, 867 (D.Minn.1979). The *Berkley* case offers a graphic illustration of where the institution by this court of pre-indictment discovery would lead in reality. The court there stated:

### Motion to Provide Copies of Stolen Documents

The government intends to present certain documents to the grand jury that it obtained from a former employee of Berkley. Berkley claims those documents were stolen by the former employee but does not allege that the employee was acting on behalf of the government when he stole the documents. *Berkley now moves for an order compelling the government to provide it with copies of the documents so the target defendants can decide whether they should testify before the grand jury. In essence, Berk-*

---

1. *Will* in fact said that the availability of an alternative avenue of review is relevant to the determination of the appropriateness of the issuance of mandamus. *Will v. United States, supra*, at 97 & n.5, 88 S.Ct. at 274 & n.5.

2. Actually, if I were in the majority in this case, I would not favor issuing the process of writ of mandamus but, rather, would prefer the approach of first simply directing the clerk to transmit a certified copy of the court's opinion to the respondent. *See United States v. Moultrie, supra*, 340 A.2d at 832.

ley is requesting pre-indictment discovery of the government's file. While the government is free to provide such discovery, this court cannot compel it to do so.

Rule 16 of the Federal Rules of Criminal Procedure limits discovery to "defendants," which of necessity excludes discovery under the Rules prior to indictment or information. Recognizing this, Berkley asks the court to invoke its inherent supervisory power over the grand jury. The company and the individual target defendants claim that without disclosure they will be denied effective assistance of counsel, because the decision of whether and how to testify before the grand jury would be made in a vacuum. The logic of Berkley's contention is somewhat difficult to perceive.

*This court's supervisory power normally will be invoked only to correct abusive practices by the grand jury or to protect substantial rights of a witness. See, e. g., United States v. Dionisio,* 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973); *Bursey v. United States,* 466 F.2d 1059 (9th Cir. 1972). Here, no abusive or illegal practices by the grand jury are claimed; the allegedly stolen documents are legally in possession of the government and may properly be considered by the grand jury. *Compare United States v. Calandra,* 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Furthermore, target defendants' right to effective assistance of counsel is not nullified by the government's refusal to allow discovery prior to their testifying before the grand jury. Grand jury proceedings are not adversary and a witness does not have all the constitutional protections afforded a defendant at trial. A witness can invoke his right against self incrimination and may have his attorney present outside the grand jury room to consult with concerning that right. *See United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976). However, he does not have the right to cross-examine witnesses or present evidence in his own behalf. *See, e. g., United States v. Levinson,* 405 F.2d

971 (6th Cir. 1968), *cert. denied,* 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969). Similarly, a grand jury witness had no constitutional right to be informed in advance of the evidence and questions the grand jury will present to him. As the Eighth Circuit has noted, "the grand jury is imbued with broad inquisitorial powers and is not obliged to furnish witnesses testifying before it a program defining the crime to be investigated or the persons against whom an accusation is sought." *LaRocca v. United States,* 337 F.2d 39, 43 (8th Cir. 1964). This court therefore will not compel the government to provide copies of the documents to the target defendants prior to their being called to testify before the grand jury. [*In re Grand Jury Proceedings Involving Berkley & Co., supra* 466 F.Supp. at 867 (emphasis added).]

The Chief Judge of the United States District Court of this jurisdiction recently had this to say on the question: "Rule 16(a)(1)(A) applies only to defendants; it governs discovery of evidence *after* the return of an indictment" (emphasis added). *In re Possible Violations of 18 U.S.C. §§ 201, 371* (D.D.C., 491 F.Supp. 211, 214, 1980). Certainly, there is no due process right to pre-indictment discovery. *Id.*

The Superior Court Criminal Rules provide no greater support for the trial court's position. Rule 16 as presently adopted contains no designation of the time for motions. This is, however, contained in Section IV of the Rules, concerning Arraignment and Preparation for Trial. Rule 12(b) provides that the time for filing Rule 16 motions is governed by Rule 47–I(c) which provides: "All motions [except certain motions not at issue here] shall be filed within 10 days of arraignment or entry of appearance of counsel, *whichever date is later,* unless otherwise provided by the court" (emphasis supplied).

In her order, the trial judge relied on the 1966 Amendment to the Federal Rule which deleted language forbidding filing of pre-indictment discovery. The trial court concluded that the substitution of the words

"upon request of a defendant" meant that a change in the law regarding pre-indictment discovery was intended. This conclusion is undermined, however, by the fact that the Supreme Court Advisory Committee's notes to the 1966 Amendment contain no reference to the change, thus making it highly improbable that a substantial change in the law was contemplated. That no substantial change was intended may also be inferred from the fact that the Court, in the same amendments, added subsection (f) to Rule 16, which provided that "a motion under this rule may be made *only* after arraignment or at such reasonable later time as the court may permit" (emphasis supplied). The comment to subsection (f) states that discovery may be resolved at pretrial hearings pursuant to Rule 17.1 which provides for such hearings "[a]t any time after the *filing* of the indictment or information." The 1974 Amendment deleted subsection (f), the comments stating that Rule 12(c) provides the judge with authority to set the time for filing pretrial motions, "at the time of the arraignment or as soon thereafter as practicable." Our Rule 12 has deleted the Federal Rule 12(c) in favor of Rule 47–I, *supra*.

The trial court's erroneous conclusion that Rule 16, which does not contain an express prohibition of its action, permissibly encompassed its order does not insulate it from the ultimate finding that it acted outside the Rule. *Compare United States v. Braman*, D.C.App., 327 A.2d 530 (1974), *cert. denied*, 423 U.S. 1032, 96 S.Ct. 562, 46 L.Ed.2d 405 (1975), *with Will v. United States, supra*. In *United States v. Moultrie, supra*, this court found that mandamus would lie to direct a judge to vacate his order quashing a grand jury subpoena. The judge had issued the order to quash after making a finding pursuant to Super.Ct. Cr.R. 17(c), that compliance with the subpoena would be "unreasonable and oppressive." This court held that even reliance on the express language of a rule may not be justified when applied in a fashion other

than what the rule "normally contemplates" to achieve unwarranted interference in the work of another branch. *Id.* 340 A.2d at 832.

The institution of pre-indictment discovery will have the result of forcing the government to devote resources to resisting discovery motions by defendants who may never be indicted. It would create serious administrative problems. It might well cause unwarranted obstacles in obtaining indictments; and negotiations with codefendants and reluctant witnesses may be compromised by early disclosure. By contrast, those arrested here have not shown that they will in fact be substantially prejudiced by a nondisclosure at this early pre-indictment stage.

There is little doubt that, in deciding whether the extraordinary writ should lie, much depends upon the degree of seriousness with which the appellate court views the action of the trial judge at issue. If the court considers it a discretionary judgment call with no particularly serious implications, then there is not justification for the extraordinary writ. If, on the other hand, the appellate court were to view the case as involving an invalid use of the particular rule which will have serious future implications harmful to the orderly administration of the criminal justice system, then quite a different view point should be taken. I take the latter view of this case and that, I believe, is what leads me to a different result.[3]

Assuming the seriousness of the consequences, the Supreme Court has not been averse to the use of mandamus to police compliance with procedural rules in civil cases. *Will v. United States, supra*, 389 U.S. at 100 n.10, 88 S.Ct. at 276 n.10. There was no need in *Will* to decide whether a more stringent standard is required for invocation of mandamus in a criminal prosecution. *Id.* I see no reason to differentiate between civil and criminal discovery in this

---

**3.** In view of our previous order in this case, *United States v. Perkins* (No. 80–323, Apr. 18, 1980), which in effect suggested the court would entertain a petition for writ of mandamus, the court's refusal to consider the merits of the petition is rather mystifying.

case, in view of the outgrowth which I foresee. Because of an impact of public importance there is more justification for mandamus in this case than in a civil case.

Rule 16 has long been read to permit only post-indictment discovery. The trial judge's order is outside the provisions of the discovery Rule. In view of the grave implications for the future administration of criminal justice in this jurisdiction, mandamus should lie. If that is not justification enough for mandamus, the vitality of the remedy is being seriously diminished. Furthermore, this is a classical case for application of the mootness doctrine exception.